**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

ROBERT J. BATSON,

       Plaintiff,

v.

AVE MARIA UNIVERSITY, INC.

       Defendant.

_____/

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF-JURY TRIAL DEMANDED**

Plaintiff, Robert J. Batson, sues Defendant, Ave Maria, and as grounds shows:

**Introduction**

1.  This is a discrimination/retaliation and libel action by Robert J. Batson, a 73-year-old
    male college women's basketball coach and retired Certified Public Accountant,
    whose employer had been seeking to get rid of him for more than 3 years, and whom
    it paid less than its similarly-situated younger male coaches of its male sports
    programs who performed work of like, kind and character, but whom they kept on to
    coach the women's team until a younger female replacement could be found, and
    whom it fired without cause on Thursday May 24, 2018, four business days after
    simultaneously awarding him a surprise poor performance review and a Performance
    Improvement Plan ("PIP")—both unfounded.  Ave Maria took these adverse actions
    after, **One,** he brought to his superiors' attention that as the oldest coach he was being
    paid substantially less than his male peers who coached mens' sports programs, in
    contravention of law, which pay differential was acknowledged and defended by the

employer on various grounds including, but not limited to, his age, that he coached a women's program and that he did not need the money; *Two,* in early 2016 he reported what he reasonably perceived was a sexual harassment scenario-that an Assistant Athletic Director/Sports Information Director and Golf Coach was dating one of his student players-and was subjected to ongoing reprisal thereafter; and, **Then**,  called into his immediate supervisor John Lamanna's office on Friday May 18, 2018 under false pretenses, where Mr. Lamanna awarded him a surprise formal written annual evaluation with an overall net rating of 1.84 out of a total of 5 points, and placed Mr. Batson on a Performance Improvement Plan ("PIP").  Mr. Batson's performance rating included, inexplicably, a "1" in "Ethics and Honesty" out of a total of 5 points and a statement that he supposedly "does not integrate the Catholic faith into his team", with no explanation or example-a pretext for discrimination, and in contravention of the libel law.  Mr. Batson was then terminated and told to leave four business days later, on May 24, 2018, with said termination pronounced effective June 30, 2018. Plaintiff sues pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*. ("Title VII"); the Florida Civil Rights Act of 1992, Chapter 760 Fla. Stat. ("FCRA"), and the common laws of the State of Florida.   He sues for all available legal and equitable relief, including, but not limited to, back wages, liquidated damages, compensatory and punitive damages, injunctive relief, and reasonable attorney's fees and litigation expenses.

**Jurisdiction and Venue**

2. Subject matter jurisdiction is based on 28 U.S.C. §§ 1331 (federal question) and 1337 (amount in controversy), and 42 U.S.C. § 2000e-5(f)(3).  The Court has supplemental jurisdiction to determine the state claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b))2), because the cause of action accrued here, and the defendant is subject to personal jurisdiction.

**Parties**

4. Plaintiff, a 73-year-old male, and older than age forty (DOB:  04/19/46), is a natural person, who, at the time of the filing of this complaint and for ten years was employed by the defendants as the women's basketball coach.  He is protected by the ADEA, Title VII and the FCRA because:

   a. He is male;

   b. He was 72 years old at the time of termination and older than age forty;

   c. He was subjected to disparate pay based on his age, sex and because he opposed sex discrimination;

   d. He was regarded differently and less favorably than male coaches of men's sports programs based on his age, sex and for opposing sex discrimination;

   e. But for his age, he would not have been subjected to a series of adverse employment effects;

    f.   He complained about what he reasonably perceived to be discrimination;

    g.   He was replaced by a younger female; and

    h.   He filed a charge of discrimination and an amended charge of discrimination and participated in proceedings related to those charges.

5.  The defendant retaliated against the Plaintiff by indicating in writing that the Plaintiff was unethical, dishonest and failed to integrate the Catholic faith into his [women's basketball] team.

6.  Ave Maria University, Inc. (hereinafter "Ave Maria") is a private Catholic university and Florida corporation with its principal place of business in Ave Maria, Florida. During the period covered by this action, it set policies that governed plaintiff's employment and issued statements of earnings to pay wages to him.

## CONDITIONS PRECEDENT

7.  Plaintiff, on or about July 6, 2018, filed a Charge of Discrimination alleging a pattern and practice and continuing violation of age discrimination, religious discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), dual filed with the Florida Commission of Human Relations ("FCRA").

8.  Plaintiff, on or about April 12, 2019, filed an Amended Charge of Discrimination alleging a pattern and practice of sex discrimination in addition to age discrimination, religious discrimination and retaliation, with the EEOC, dual-filed with the FCRA.

9.  The plaintiff has received a dismissal and "Notice of Right to Sue" from the EEOC date stamped as issued June 18, 2019, attached.

10. More than 180 days have passed since the filing of the July 2018 without the Florida Commission on Human Relations either conciliating plaintiff's claims of

discrimination and retaliation under the FCRA or making a finding of no-cause against him, giving plaintiff the right to bring a civil action on those claims.

11. All conditions precedent to the bringing of this action have occurred, been performed or have been waived.

## GENERAL ALLEGATIONS

12.  In 2008, Ave Maria hired Mr. Batson as the women's basketball coach.

13.  Mr. Batson is well-qualified to serve as the women's basketball coach.

14.  Ave Maria's initial employment offer to Mr. Batson sought to pay him substantially less than the younger male coach of the Ave Maria men's basketball team.

15.  Upon Ave Maria extending Mr. Batson an employment offer, Mr. Batson opposed that Ave Maria paid a younger male coach of the men's basketball team more than they were offering to pay him as the women's basketball coach.

16.  Ave Maria asserted the pretextual rationale for the pay disparity that the women's basketball coach was a part time position.

17.  Mr. Batson declined to accept employment with Ave Maria until they increased their initial offer and paid Mr. Batson according to a full-time position.

18.  Mr. Batson's work performance was exemplary.

19.  The women's basketball program was extremely successful under Mr. Batson's leadership.

20. Mr. Batson was the most successful coach in the history of the school.

21.  The retention rate and graduation rate for Mr. Batson's players during his tenure was exemplary.  They excelled in the classroom.

**22.** Mr. Batson's women's basketball team is the ***only*** team at Ave Maria that has a winning record.

**23.** Mr. Batson maintained his appointed budget to recruit players.

**24.** Despite these accomplishments, Ave Maria continued to pay Mr. Batson less than their younger male athletic coaches of men's sports teams due to his age, sex and because he opposed sex discrimination concerning his female student athletes.

**25.** Ave Maria provided Mr. Batson pay records in the course of his duties that definitively reflected this pay disparity.

**26.** Mr. Batson opposed the pay disparity on an on-going basis up to and through his separation.  Ave Maria took no remedial action.  Ave Maria hired several younger male coaches of men's sports programs and paid them more than Mr. Batson during Mr. Batson's ten-year tenure.

**27.** Ave Maria asserted various pretextual reasons for the pay disparity including but not limited to Mr. Batson's age, previous career, retirement status, because he coached a women's program and because he did not need the money.

**28.** Ultimately, Ave Maria agents told Mr. Batson they would never increase his pay in a thinly veiled campaign to compel him to quit.

**29.** On or about three years' ago, Ave Maria employed three individuals all of whom are significantly younger than Mr. Batson and placed them above Mr. Batson in the command chain-John Lamanna, John King and Kim King.

**30.** Mr. Batson's most recent immediate supervisor was John Lamanna, initially men's basketball coach and then also athletic director.

31. Notwithstanding his seniority and advanced experience, Ave Maria did not offer Mr. Batson either role extended to Mr. Lamanna-men's basketball coach or athletic director.

32. Mr. Batson's qualifications and experience exceed those of Mr. Lamanna.

33. Mr. Lamanna reported to Kim King, Vice President, Student Affairs.

34. Scott King is the Director of Mission Outreach.  Scott King and Kim King are husband and wife.

35. James Towey is Ave Maria's President.

36. Mr. Lamanna demonstrated little support or regard for Mr. Batson as women's basketball coach.  Mr. Lamanna failed to communicate with Mr. Batson effectively about business matters, marginalized him and flatly refused to endorse any pay increase or budget increase for him.

37. Ave Maria's workplace mistreatment of Mr. Batson escalated in 2016, culminating in his firing in 2018, after he reported an Assistant Athletic Director and Coach was dating one of his student players.

38. Ave Maria told Mr. Batson they were aware of the relationship, did not tell him, and did not take any remedial action, stating the student player would be graduating soon.

39. Mr. Batson was stunned, as Ave Maria staunchly defended its conservative Catholic culture and related student and faculty policies but ignored the gravity of what he reasonably perceived was a *quid pro quo* sexual harassment issue.

40. Thereafter, Ave Maria singled Mr. Batson out for discipline and held him to a different and higher standard than the younger male coaches of male sports

programs, discriminating against him with respect to his compensation, terms, conditions and privileges of employment based upon sex and age.

41. Mr. Lamanna abruptly required Mr. Batson to recruit, coach and operate a junior varsity women's basketball team after his varsity women's team schedule with travel was already set, where there was no practice time available in the gym due to the varsity men's and women's set training schedules, and without increasing his pay, budget (not even for uniforms) nor initially permitting him to hire an assistant.

42. Despite the hardship and lack of funding or increased compensation, Mr. Batson assembled the junior varsity team.

43. Mr. Batson's superiors also faulted Mr. Batson for alleged problems ranging from the petty to the significant without placing younger male coaches of men's programs under the same scrutiny.

44. Ave Maria criticized Mr. Batson for his team not having already completed "ALPHA" in 2017, a mission program sponsored by Mr. King, when Mr. King himself said it was too late in the year to start.  Younger male coaches of men's programs were not mandated to have their players attend Alpha or faulted for failing to have participated in the program with expediency.

45. In 2018, Mr. Batson's superiors perpetrated on President Towey the belief Mr. Batson intentionally slighted him on Senior Night when they knew the converse was true.  These superiors required Mr. Batson to apologize to President Towey.  Mr. Batson acquiesced, and Towey rebuked him in writing.

46. The true facts were Mr. Batson had no idea President Towey was attending Senior Night and accelerated the evening's schedule, *with permission,* by a few minutes to

accommodate warmups for the athletes.  The **same** Assistant Athletic Director and Coach that Mr. Batson reported over dating one of his players granted Mr. Batson permission to alter the schedule.  He never told Mr. Batson President Towey was expected, and he never told Mr. Batson's superiors that he granted permission to accelerate that evening's schedule.

47. Mr. Batson was required to attend "Mass in the grass" with the women's basketball team and was told it was mandatory for athletes-yet the men's teams were not in attendance.

48. Mr. Batson was faulted for his female Assistant Coach, by happenstance, stopping by to bid farewell for the season to the women's team the same day Mr. King was speaking to the team, and also faulted Mr. Batson for the female Assistant Coach's remarks in defense of the female players.  Mr. Batson was not present and had no control over the Assistant's presence or her commentary there.

49. On or about April 26, 2018, Mr. King told Mr. Batson that his women's basketball team should not return to Ave Maria.  Mr. King described the women as "unhappy", saying he concluded this because the women did not wave at him on campus or know him.  In a subsequent conversation with Mr. Batson on or about the same date, Mr. King said he spoke to the women's basketball team a second time and was convinced they should leave Ave Maria.

50. Mr. Batson advocated for the women's team, and opposed Mr. King's remarks on behalf of his female players as sexist and discriminatory.  Mr. Batson asked whether by extension Mr. King did not think he should be there either.  Mr. King nodded

51. Mr. Batson, a male coach of Ave Maria's women's basketball team, was being paid less than the male head coach of men's basketball team due to his age and sex, and where Mr. Batson was opposing discrimination against his female players.

52. Ave Maria conveyed to Mr. Batson through what they said, and through what remained unsaid, that they do not value the women's basketball team and they subjected him to reprisal for opposing the same.

53. Mr. Lamanna surprised Mr. Batson with his third annual evaluation on Friday May 18, 2018 after summoning him to a meeting under false pretenses.

54. Mr. Lamanna read the evaluation aloud to Mr. Batson.

55. Mr. Lamanna had already signed the evaluation, along with Kim King.

56. Mr. Lamanna awarded Mr. Batson an overall net rating of 1.84 out of a total of 5 points, without warning, cause or provocation.

57. Mr. Lamanna also placed Mr. Batson on a "Professional Development Plan", a form of discipline.

58. Mr. Lamanna awarded Mr. Batson a rating of "1" in "Ethics and Honesty" out of a total of 5 points. He did not expound upon what he alleged to be unethical, nor did he supply any purported example.

59. Mr. Lamanna also charged verbally and in the written review that Mr. Batson supposedly "does not integrate the Catholic faith into his team"- but again, provided no example or explanation-not only a pretext for discriminatory and retaliatory conduct, but a religious-based slur.

60. Mr. Batson had not committed any serious policy infraction or suffered any significant incident concerning his team members prior to the poor review.

61. Mr. Lamanna provided no explanation concerning why he had not met with Mr. Batson about any of these matters or called them to Mr. Batson's attention prior to the review.

62. Mr. Batson was embarrassed and offended.

63. Mr. Batson reasonably concluded the poor review was calculated to compel him to quit.  He did not quit.

64. Mr. Batson told Mr. Lamanna he did not accept the evaluation or Professional Development Program, which was vague, non-specific, discriminatory, defamatory and as mentioned above, a form of discipline.

65. The evaluation and performance plan contained untrue statements that Mr. Batson was unethical and dishonest, and that he failed to integrate the Catholic faith into his team.

66. The evaluation and performance plan were circulated to a very wide audience outside the "need to know" basis and incorporated into Mr. Batson's personnel record at Ave Maria.

67. The spoken comments by Mr. Batson's superior John Lamanna and the written comments by Mr. Lamanna and Mr. Batson's other superiors at Ave Maria are inflammatory and defamatory as they refer to Mr. Batson as dishonest, unethical and failing to integrate his Catholic faith into his team.

68. At the time Mr. Lamanna and Mr. Batson's other superiors made these remarks verbally and in writing, they knew that these statements were not true.

69. Mr. Lamanna and Mr. Batson's other superiors at Ave Maria made these statements, verbally and in writing, with malice.

70. Mr. Batson left the May 18, 2018 meeting employed.  Thursday May 24, 2018 of that same week, Mr. Lamanna alerted Mr. Batson to an e-mail stating Ave Maria would not retain Mr. Batson past June 30, 2018.  Mr. Batson continued to work through mid-week of the first week of June 2018.

71.  On May 30, 2018, Human Resources advised Mr. Batson he would not receive severance pay or undergo an exit interview because he was "terminated."

72.  On June 1, 2018, Mr. Batson reported to work and his work E-mail account was locked, precluding his ability to conduct Ave Maria business.  He directed an E-mail to John Lamanna inquiring into this.  Mr. Lamanna did not reply.

73.  Human Resources then responded the following Monday June 4, 2018, stating that John Lamanna requested that the Internet Technology (IT) staff terminate Mr. Batson's access to his Ave Maria E-mail without notifying Mr. Batson, and that Mr. Batson was "not required to work any longer for Ave Maria University."

74.  Ave Maria paid Mr. Batson for the month of June 2018.

75. Post firing, members of the women's basketball team directed a letter to President Towey supporting Mr. Batson and requesting that Towey retain him as head coach, to no avail.

76.  Mr. Towey responded in writing, in part, that he did not know Mr. Batson.  He did not speak to Mr. Batson concerning this incident.

77.  Mr. Batson was replaced in July or August 2018 by a significantly younger female employee (approximately 29-years-old) whose qualifications and experience are inferior to those of Mr. Batson.

78.  Mr. Batson has not been able to secure similar employment in his field, to date.

79. Mr. Batson reasonably concludes Ave Maria is providing him with an unfavorable reference.

80. Mr. Batson has heard rumors repeated in coaching circles that Ave Maria reputedly fired him for not being "Catholic enough."

81. Mr. Batson's rights have been violated and he has been damaged.

82. Ave Maria treated Mr. Batson, a long time highly performing employee disadvantageously under circumstances which gave rise to an inference of unlawful discrimination, i.e., it removed him from his position on May 24, 2018, replacing him with a 29-year-old female.

83. Mr. Batson's age and sex, including opposition-clause retaliation for advocating for his female players, was the reason that prompted Ave Maria to replace Mr. Batson in his women's basketball coach assignment with a substantially younger female employee.

84. Ave Maria, through the actions alleged above, affected Mr. Batson in a "term, condition or privilege" of his employment as envisioned by Title VII and the FCRA.

85. Ave Maria's treatment of Mr. Batson was based on his:

    a. Age;

    b. Sex;

    c. Protected activity.

86. The violation of Mr. Batson's federally and statutorily protected right to be free of illegal discrimination constitutes irreparable harm for which Mr. Batson has no adequate remedy at law entitling Mr. Batson to injunctive relief.

## Count I: Title VII Sex Discrimination

87. Plaintiff realleges and incorporates the allegations of 1-4(a); 4(c)-4(d); 4(g); 6-17; 19-28; 30; 33-57; 60-64; 70-78; and 81-86.

88. Title 42 U.S.C. § 2000e-2 provides, in pertinent part:

89. It shall be an unlawful employment practice for an employer –

(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . .sex. . .; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's. . .sex. . .

90. Ave Maria's actions were intentionally and purposefully taken in regard to Mr. Batson on account of his sex in violation of his rights under 42 U.S.C. § 2000e-2(a).

91. As a direct, natural, proximate and foreseeable result of Ave Maria's actions, Mr. Batson has suffered emotional distress, embarrassment, inconvenience, and other pecuniary and non-pecuniary damages and will continue to suffer additional losses in the future.

92. The discrimination against Mr. Batson, of which Ave Maria's higher management was aware and which was ratified, was in such reckless disregard of Mr. Batson's statutory rights against discrimination as to entitle Mr. Batson to an award of punitive damages against Ave Maria to punish them and to dissuade such conduct in the future.

93. The violation of Mr. Batson's federally and statutorily protected right to be free of unlawful discrimination constitutes irreparable harm for which Mr. Batson has no adequate remedy at law entitling Mr. Batson to injunctive relief.

94. Mr. Batson is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. §2000e-5(k).

WHEREFORE, plaintiff, Robert Batson, prays that this court will:

*One,* issue a declaratory judgement that Ave Maria's practices toward Mr. Batson violated his rights against discrimination under Title VII;

*Two,* enjoin defendants and their agents from continuing to violate Mr. Batson's statutory rights under Title VII and to make Mr. Batson whole through reinstatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

*Three,* enter a judgment for Mr. Batson and against Ave Maria or compensatory and punitive damages;

*Four,* grant Mr. Batson his costs and reasonable attorney's fees pursuant to 42 U.S.C. §2000e-5(k); and

*Five,* grant Mr. Batson such other and further relief as the circumstances and law provide.

## Count II:  Title VII Retaliation

95. Mr. Batson realleges and incorporates the allegations of 1-4(a); 4(d); 4(f); 4(h); 6-13; 15-23; 26-28; 30; 33-64; 70-78; 81; and 83-86.

96. Title 42 U.S.C §2000e-3(a) provides, in pertinent part, that:

It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an

unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

97. Mr. Batson's complaints to Ave Maria and to the EEOC and FCHR, and his filing charges of discrimination and participation in proceedings related to his charges, were protected activities under both Title VII and the FCRA.

98. Ave Maria's ineffectual response to Mr. Batson's reports, including their failure to take remedial action concerning his pay, sexual harassment report and advocacy for his female student athletes, all combined into a constellation of reactions that were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

99. Ave Maria's actions in failing to remedy Mr. Batson's situation violates his rights under Title VII and the FCRA.

100. As a direct, natural, proximate and foreseeable result of Ave Maria's actions, Mr. Batson has suffered emotional distress, embarrassment, inconvenience and other pecuniary and non-pecuniary damages and will continue to suffer additional losses in the future.

101. The discrimination against Mr. Batson, of which Ave Maria's higher management was aware and which was ratified, was in such reckless disregard of Mr. Batson's statutory rights against discrimination as to entitle Mr. Batson to an award of punitive damages against Ave Maria to punish them and to dissuade such conduct in the future.

102. The violation of Mr. Batson's statutorily protected right to be free of unlawful discrimination constitutes irreparable harm for which Mr. Batson has no adequate

remedy at law entitling Mr. Batson to injunctive relief.

103.    Mr. Batson is entitled to recover reasonable attorney's fees and litigation

expenses pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff, Robert J. Batson, prays that this Court will:

*One,* issue a declaratory judgment that Ave Maria's practices toward Mr. Batson

violated his rights against retaliation under TitleVII;

*Two,* enjoin Ave Maria and their agents from continuing to violate Mr. Batson's statutory

rights under Title VII and to make Mr. Batson whole through reinstatement, back pay

and restoration of seniority and benefits, or, if that is not practical, through an award of

front pay;

*Three,* enter a judgment for Mr. Batson and against Ave Maria for compensatory and

punitive damages;

*Four*, grant Mr. Batson his costs and reasonable attorney's fees pursuant to 42 U.S.C.

§2000e-5(k); and

*Five,* grant Mr. Batson such other and further relief as the circumstances and law

provide.

### Count III:  FCRA Sex and Age Discrimination

104.    Plaintiff realleges and incorporates the allegations of 1-4(d); 4(g); 6-57; 60-64;

70-78; and 81-86.

105.    The Florida Civil Rights CT ("FCRA") provides at §760.1091) FLA. STAT., as

follows:

It is an unlawful employment practice for an employer:

(a) To discharge or to fail or refuse to hire any individual
    or otherwise to discriminate against any individual with respect

to compensation, terms, conditions or privileges of employment, because of such individual's. . .sex. . .[and/or] age. . .

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's. . .sex. . .[and/or] age. . .

106.   Ave Maria's behavior toward Mr. Batson, through the behavior of their managers and agents, was based on Mr. Batson's sex and age and constituted discrimination as proscribed by §760.10(1), Fla. Stat.

107.   As a direct, natural, proximate and foreseeable result of Ave Maria's actions, Mr. Batson as suffered emotional distress, embarrassment, inconvenience and other pecuniary and non-pecuniary losses and will continue to suffer additional losses in the future.

108.   The discrimination against Mr. Batson, of which Ave Maria's higher management was aware and which was ratified, was in such reckless disregard of Mr. Batson's statutory rights against discrimination as to entitle Mr. Batson to an award of punitive damages against Ave Maria to punish them and to dissuade such conduct in the future.

109.   The violation of Mr. Batson's statutorily protected right to be free of unlawful discrimination constitutes irreparable harm for which Mr. Batson has no adequate remedy at law entitling Mr. Batson to injunctive relief.

110.   Mr. Batson is entitled to recover reasonable attorney's fees and litigation expenses pursuant to § 760.11(5), Fla. Stat.

WHEREFORE, Plaintiff, Robert J. Batson, prays that this Court will:

**One,** issue a declaratory judgment that Ave Maria's practices toward Mr. Batson violated his rights against discrimination under the FCRA;

**Two,** enjoin Ave Maria and their agents from continuing to violate Mr. Batson's statutory rights under the FCRA and to make Mr. Batson whole through reinstatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

**Three,** enter a judgment for Mr. Batson and against Ave Maria for compensatory and punitive damages;

**Four**, grant Mr. Batson his costs and reasonable attorney's fees pursuant to § 760.11(5), Fla. Stat.; and

**Five,** grant Mr. Batson such other and further relief as the circumstances and law provide.

### Count IV:  FCRA Retaliation

111.    Mr. Batson realleges and incorporate the allegations of 1-4(a); 4(d); 4(f); 4(h); 6-13; 15-23; 26-28; 30-64; 70-78; 81; and 83-86.

112.    The Florida Civil Rights Act ("FCRA") provides at § 760.10(7), FLA. STAT., as follows:

It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate agains any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

113.    Ave Maria's behavior towards Mr. Batson was in retaliation for his protected activity and constituted retaliation as proscribed by § 760.10(7), FLA. STAT.

114.   Mr. Batson is entitled to recover reasonable attorney's fees and litigation expenses against Ave Maria pursuant to § 760.11(5), FLA. STAT.

### Prayer for Relief

WHEREFORE, plaintiff, Robert J. Batson, prays this court will:

*One,* issue a declaratory judgment that Ave Maria's practices toward Mr. Batson violated his rights against retaliation under the FCRA;

*Two,* enjoin Ave Maria and their agents from continuing to violate Mr. Batson's statutory rights under the FCRA and to make Mr. Batson whole through reinstatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

*Three,* enter a judgment for Mr. Batson and against Ave Maria for compensatory and punitive damages;

*Four*, grant Mr. Batson his costs and reasonable attorney's fees pursuant to § 760.11(5), Fla. Stat.; and

*Five,* grant Mr. Batson such other and further relief as the circumstances and law provide.

### Count V:  ADEA Age Discrimination

115.    Mr. Batson realleges and incorporate the allegations of 1-4(d); 4(g); 6-49; 51-57; 60-64; 70-78; and 81-86.

116.   The Age Discrimination in Employment Act ("ADEA") provides at 29 U.S.C. § 623, as follows:

a) Employer practices
   It shall be unlawful for an employer--(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or 3) to reduce the wage rate of any employee in order to comply with this chapter.

117.   Ave Maria's actions, more particularly alleged above, constituted violations of the Age Discrimination in Employment Act, 20 U.S.C. § 621, <u>et. seq.</u>, and were done willfully with knowing or reckless disregard of the ADEA's proscriptions.

118.   As a direct, natural, proximate and foreseeable result of Ave Maria's actions, Mr. Batson has lost wages and benefits in the past and will suffer additional losses in the future, including the income from the eight additional years he planned to work, having told numerous people at Ave Maria including players, parents, peers, administrators and supervisors that he planned to work such years.

119.   Ave Maria's treatment of Mr. Batson constituted a willful violation of the ADEA, entitling Mr. Batson to recover liquidated damages.

120.   Mr. Batson is entitled to be awarded reasonable attorney's fees and litigation expenses pursuant to 29 U.S.C. § 626 (b).

WHEREFORE, plaintiff, Robert J. Batson, prays that this Court will:

*One,* issue a judgment that the discrimination against Mr. Batson by Ave Maria was a violation of Mr. Batson's rights against age discrimination under the ADEA;

*Two,* enjoin Ave Maria and their agents from continuing to violate Mr. Batson's federally protected and to make Mr. Batson whole through back pay and restoration

of seniority and benefits, and reinstatement, or, if that is not practical, through an award of front pay;

**Three,** enter a judgment for Mr. Batson and against Ave Maria for back pay and liquidated damages for violations of the ADEA;

**Four**, grant Mr. Batson his costs, litigation expenses and reasonable attorney's fees against Ave Maria; and

**Five,** grant Mr. Batson such other and further relief as the circumstances and law provide.

### Count VI:  ADEA Retaliation

121.    Mr. Batson realleges and incorporate the allegations of 1-4(a); 4(c)-4(d); 4(f); 6-28; 30; 33-38; 40-49; 51-54; 60-64; 70-78; 81; and 84-86.

122.   The Age Discrimination in Employment Act ("ADEA") provides at 29 U.S.C. § 623, as follows: Mr. Batson realleges and incorporate the allegations of **

123.   The Age Discrimination in Employment Act ("ADEA") provides at 29 U.S.C. § 623, as follows:

d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation
It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

124.   Ave Maria's actions, more particularly alleged above, constituted violations of the Age Discrimination in Employment Act's retaliation provisions, 20 U.S.C. § 621, <u>et.</u>

seq., and were done willfully with knowing or reckless disregard of the ADEA's proscriptions.

125.    As a direct, natural, proximate and foreseeable result of Ave Maria's actions, Mr. Batson has lost wages and benefits in the past and will suffer additional losses in the future, including the income from the eight additional years he planned to work , having told numerous people at Ave Maria including players, parents, peers, administrators and supervisors that he planned to work such years.

126.    Ave Maria's treatment of Mr. Batson constituted a willful violation of the ADEA, entitling Mr. Batson to recover liquidated damages.

127.    Mr. Batson is entitled to be awarded reasonable attorney's fees and litigation expenses pursuant to 29 U.S.C. § 626 (b).

WHEREFORE, plaintiff, Robert J. Batson, prays that this Court will:

*One,* issue a judgment that the discrimination against Mr. Batson by Ave Maria was a violation of Mr. Batson's rights against age discrimination retaliation under the ADEA;

*Two,* enjoin Ave Maria and their agents from continuing to violate Mr. Batson's federally protected and to make Mr. Batson whole through back pay and restoration of seniority and benefits, and reinstatement, or, if that is not practical, through an award of front pay;

*Three,* enter a judgment for Mr. Batson and against Ave Maria for back pay and liquidated damages for violations of the ADEA's retaliation provisions;

*Four*, grant Mr. Batson his costs, litigation expenses and reasonable attorney's fees against Ave Maria; and

*Five,* grant Mr. Batson such other and further relief as the circumstances and law provide.

### Count VII:  Defamation-Libel

128.    Mr. Batson realleges and incorporate the allegations of 1-4(a); 5-13; 17-23; 30; 33-37; 44; 47; 53-76; and 78-81.

129.    On May 24, 2018, Ave Maria and its agents published the following false statements about Mr. Batson:

      a.  Mr. Batson was not ethical and was dishonest; and

      b.  Mr. Batson failed to integrate the catholic faith into his team.

130.    These false statements about Mr. Batson were published in a Performance Review and Performance Improvement Plan which was and incorporated into Mr. Batson's personnel record at Ave Maria where it is discoverable and available for dissemination to a very wide audience outside the "need to know" basis.  The document(s) is/are attached to this Complaint and marked as "Exhibit A."

131.    These false statements were published with malice.

132.    Ave Maria and their agents acted with malice because they were discriminating against Mr. Batson and were compelling him to quit, but he did not quit.

133.    Ave Maria sought to separate Mr. Batson through attrition by writing demoralizing statements concerning him, including but not limited to attacking his religious convictions and depth of devotion.

134.   Mr. Batson has been damaged by these false statements because the statements subject Mr. Batson to hatred, contempt, ridicule and disgrace.

135.   Mr. Batson has been damaged by these false statements because the statements injured Mr. Batson in his profession and business.

136.   Mr. Batson has been damaged by these false statements because the statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Mr. Batson's business and duties as a coach and leader of student athletes.

WHEREFORE, plaintiff, Robert J. Batson prays that this Court will:

*One,* issue a judgment that awards Mr. Batson all compensatory damages including consequential and incidental damages as a result of Ave Maria's wrongdoing, to be determined at trial;

*Two,* awarding Mr. Batson attorney's fees and costs;

*Three,* requiring Ave Maria to make a public retraction of the false statements;

*Four,* granting preliminary and permanent injunctive relief to prevent Ave Maria from making further defamatory remarks; and

*Five,* such other further relief as this Court deems just and proper.

**Jury Demand**

Plaintiff, Robert J. Batson, demands trial by jury on all issues so triable.

Dated:  August 1, 2019                    Respectfully submitted,

                                          /s/ Geralyn F. Noonan, Esquire

                                          Geralyn F. Noonan, Esquire
                                          P.O. Box 07338
                                          Fort Myers, Florida 33919-0338
                                          Phone:  239-694-7070
                                          Fax:  239-481-0993
                                          Florida Bar No.:  0968020
                                          *Attorney for Plaintiff*